Anthony J. Di Giovanna, J.
The complaint, seemingly alleging a cause of action on contract, states, in effect, a cause of action for money had and received based upon the legal argument that there was such a failure of consideration under the contract that it failed, and that consequently the part payment made under the terms of the contract should be returned.
By a contract made on December 5,1956, consisting of printed portions of a standard form of contract of sale on the form supplied by the New York Board of Title Underwriters and a rider attached thereto, certain agreements were made between the parties which are now the. subject of litigation. In the printed portion of the contract various clauses were deleted and a typewritten rider attached thereto. The printed portion was permitted to retain the following paragraph: “It is under-
stood and agreed that all understandings and agreements heretofore had between the parties hereto are merged in this contract, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this contract, made by the other. * * * This agreement may not be changed or terminated orally.”
Mr. Louis Malin, plaintiff’s president, is an attorney at law, having been so engaged for many years. He signed the contract on plaintiff’s behalf. He must have understood the legal effect of that clause in order to have permitted it to remain within the confines of the entire contract.
The agreement provided for the purchase of property in the Town of Islip for the sum of $25,000 upon part payment and deposit of $2,500. The printed portion of the contract provides *487 that title closing should be had on May 1, 1957. Nothing was said in the printed portion concerning the question as to whether the date of closing was to be deemed of the essence of contract. In the typewritten rider it was provided that it was the agreement and understanding of the parties that the purchaser intended to use the premises as a gasoline station.
It was provided in the printed portion that “ Said premises are sold and are to be conveyed subject to: 1. Zoning regulations and ordinances of the city, town or village in which the premises lie which are not violated by existing structures.”
It was then provided in the typewritten portion of the agreement: “ The seller hereby agrees to promptly apply for rezoning of the aforesaid parcel of land for business purposes and to obtain a gasoline service station permit therefor in accordance with the said plans and specifications.”
It must be noted and so the court finds that no agreement was made by the seller to do anything else than to apply for the rezoning and obtain the permit. It was not expressly provided in words that the seller agreed that the sale could not be effectuated if he failed to obtain the rezoning order and permit. The paragraph above set forth concerning the fact that the sale was subject to existing zoning regulations and ordinances was not negatived by this paragraph. There was no condition added to the typewritten rider at this point stating that if the seller’s application was denied he was obligated to refund the deposit or that the seller would be unable to convey a good title.
Immediately following the last-stated typewritten portion the following was provided: “To effectuate this understanding the purchaser hereby agrees to promptly engage an attorney at its own cost and expense to apply to the proper governmental authorities for the reclassification of the aforesaid parcel of land from a residence A to such business classification as will permit the erection of a gasoline service station thereon. The purchaser shall have the right to institute such proceeding in the name of the seller and the seller hereby agrees to cooperate with the purchaser in the prosecution of any application for such rezoning and to sign any and all necessary applications, documents and papers that may be legally required in connection with the prosecution of the application.”
It is clear and the court so finds that the purchaser, in its eagerness to obtain the property so that it could go into the gasoline station business, understood and agreed to do all that which was necessary for application for a rezoning variance and proceedings to obtain the necessary permit. The evidence shows that the purchaser promptly applied for the rezoning permit *488 and that he made no demands upon the seller to partake in any of the proceedings. The purchaser relied solely upon its own efforts to obtain the necessary permits. Nothing was provided in the typewritten rider concerning the failure on the part of the seller to obtain a variance. In contrast thereto Mr. Malin, an attorney, permitted the printed portion of the contract to remain, namely, that the property was being sold subject to the existing zoning regulations. However, it was provided in the contract that an “ out ” or an “ escape ” was provided for the purchaser in the event that it failed to obtain a variance within 150 days. That was expressed in the following terms: “In the event that the purchaser shall deliver to the seller at the office of M. J. Saleh, 245 Fifth Avenue New York 16, New York, a written denial of such reclassification from residence A to a business classification as will permit the erection of a gasoline service station on aforesaid parcel of land within one hundred and fifty (150) days from date hereof, then the seller hereby agrees to refund to the purchaser the $2500 deposit made hereunder and upon such payment this contract shall be null and void and neither party shall have any liability as against the other party under this contract. As to this paragraph of this contract, time shall he deemed as of the essence.” (Emphasis added.)
It is this latter italicized portion of the contract which now has become the crux of this case. Concededly the purchaser failed to obtain an order of variance within the 150-day period and as a matter of fact the application was denied by a resolution of the Town of Islip on August 13, 1957. The 150-day period would have expired on or about May 4. When the date arrived for the closing of title within the terms of the printed portion of the contract the seller made demands upon the purchaser to consummate the sale. The purchaser then took the position that because the Town Board had not yet ruled upon the application, that portion of the contract which said that “ time was of the essence ” was not binding and automatically became extended to such time as would be necessary for the Town Board to make its finding. The seller, on the other hand, contends that it was never the intention of the parties to permit the tying up of this particular piece of property for a longer period than 150 days, during which time opportunity was given to the purchaser to escape from the obligations under the contract. It is the seller’s contention that the purchaser failed to take advantage of this and that consequently it became the purchaser’s obligation to take such title as was otherwise provided under the contract.
*489 The court finds that it is clear from the admitted facts and from the pleadings that the purchaser failed to present a notice of declination within the 150-day period set forth. Consequently, the right of the purchaser to recover the deposit under the contract failed in view of the fact that he could exercise his right to recover the deposit only within the 150-day period. Mr. Malin, an attorney, must have known the meaning of the words “As to this paragraph of this contract, time shall be deemed as of the essence.” He must have known its meaning when contrasted to that portion of the contract as quoted above which expressly limited the parties to the terms of the contract for its meaning and context. That portion of the printed contract which provided for delivery of title on May 1,1957 was not affected by the 150-day limitation nor by that clause providing that said 150-day limitation was to be deemed for the purposes of that paragraph as of the essence of the contract. Consequently, the court finds that under the contract the seller was obligated to convey title on May 1, 1957 or within a reasonable period thereafter as agreed upon by the parties.
There was provided in the contract as follows: “In the event that the seller is unable to convey title in accordance with the terms of this contract, the sole liability of the seller would be to refund to the purchaser the amount paid on account of the purchase price and to pay the net cost of examining the title, which cost is not to exceed the charges fixed by the New York Board of Title Underwriters, and upon such refund and payments being made this contract shall be considered cancelled.”
Clearly this portion of the contract had nothing to do with the seller’s obligation under the rider. It pertained solely to the obligation of the seller to convey a good title subject to the zoning regulations and nothing more. Under the circumstances the purchaser undertook to accept such title as could be conveyed by the seller after the expiration of the 150-day period without regard to any problems concerning variances or permits.
Accordingly, the court renders judgment on the merits to the defendant and dismisses the complaint.